**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DANIEL RAY LAJOCIES, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> CITY OF NORTH LAS VEGAS, MARK ) <br> PARESI, JOSEPH FORTI, OFFICER ) <br> BRIGIDA, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:08-cv-00606-GMN-GWF |

Before the Court is Plaintiff's Motion for Court to Provide Plaintiff with Adverse Inference Instruction to the Jury as a Result of Defendants' Spoliation of Evidence (#96), Defendants' Response (#102) and Plaintiff's Reply (#107).

## I.     FACTUAL BACKGROUND

Plaintiff Daniel LaJocies brings this suit against Defendant City of North Las Vegas as the result of an incident occurring on July 29, 2006 at the North Las Vegas Detention Center where Plaintiff was being held as an inmate. In response to an altercation in a cell, Plaintiff claims he was "shot in the head with the taser" by Detention Center Officers. After he fell to the ground, he "was [ ] tasered in the chest" and groin. Plaintiff's eye was photographed and treated for injuries; however, his prior corneal transplant had dislodged and he lost his right eye.

## II.    RELIEF REQUESTED

Plaintiff requests an adverse inference instruction claiming that a surveillance videotape and photographs of the incident have either been destroyed or lost by the Defendants. Defendants candidly admits that, "[u]ndeniably, there was a videotape and

photographs which cannot now be located." (#102, at page 5).

Defendants argue that the missing video and photographs do not require an adverse inference instruction because they are not relevant. The officers do not dispute that Plaintiff was tased nor do they dispute that his eye was injured. Rather, Defendants claim Plaintiff's eye injury was caused by his involvement in the altercation with other inmates, including Mr. Welsh[1] who testified in his deposition that he is the one who hit Plaintiff in the eye and caused his injury. Additionally, Defendants argue that the video is not relevant because the camera would have only captured the door threshold of the cell and not the altercation inside and the photographs are not relevant because they would only have shown the injury to Plaintiff's eye which is not in dispute.

## III.   LEGAL ARGUMENT

### 1.   Spoliation

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002). The applicable standard of proof in the Ninth Circuit appears to be by a preponderance of the evidence. *Hammann v. 800 Ideas, Inc.*, 2010 WL 4943991, 7 (D.Nev.2010) citing *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1072 (N.D.Cal.2006). A party has a duty to preserve evidence when it knows or has reason to know that the evidence is 'potentially relevant' to litigation. *Id.* A party engages in spoliation "as a matter of law only if they had some notice that the documents were 'potentially relevant' to the litigation before they were destroyed. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). A party

---

[1] Mr. Welsh also apparently testified at his deposition that he had unsuccessfully tried to dupe Plaintiff into paying him for favorable testimony but that he had always planned to testify against Plaintiff even after receipt of payment to make sure Plaintiff "doesn't get a dime because he doesn't deserve it."

1 must preserve evidence it knows or should know is relevant to a claim or defense of any
2 party, or that may lead to the discovery of relevant evidence. *United States v. Kitsap*
3 *Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002). The duty to preserve arises not only
4 during litigation, but also extends to the period before litigation when a party should
5 reasonably know that evidence may be relevant to anticipated litigation. *In re Napster*, 462
6 F.Supp.2d at 1067 (duty to preserve begins when a party should have known that the
7 evidence may be relevant to future litigation).

8     In this case, Defendants were clearly on notice immediately following the altercation
9 that this incident would potentially result in litigation. Defendants' own protocols provide
10 procedures for the preservation of such evidence. Clearly, Defendants knew or should have
11 known that the photographs and videotape could be 'potentially relevant' to the claims of a
12 plaintiff as well as to its own defenses.

13     The Court is not persuaded that the missing evidence is now wholly irrelevant.
14 Moreover, because "the relevance of ... [destroyed] documents cannot be clearly ascertained
15 because the documents no longer exist," a party "can hardly assert any presumption of
16 irrelevance as to the destroyed documents."*Leon v. IDX Systems Corp.*, 464 F.3d 951, 959
17 (9th Cir. 2006) citing *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir.1982).
18 Despite the limited viewing angle of the videotape which may have captured only the
19 threshold of the door but not inside the cell, it is likely that it did still capture at least some of
20 the altercation (whether sights or sounds) and could have potentially assisted the jury to
21 understand the tenor of the event and to evaluate the credibility of the witnesses who are
22 providing conflicting descriptions. Likewise, the missing photographs of the injuries
23 possibly could have assisted experts in determining how the injury was more likely to have
24 been caused. At the very least, even if Defendants are correct in their analysis that the
25 photographs and videotapes are now no longer relevant to the ultimate issues which will be

presented to the jury, the Defendants still had an initial and continuing duty to preserve the videotape and photographs because they still could likely have led to the discovery of other relevant evidence. Therefore, the Court finds that the Defendant did engage in spoliation and a sanction is appropriate.

### 2. Sanctions

There are two sources of authority under which a court can sanction a party for spoliation of evidence-its inherent authority or Rule 37. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir.2006). Regardless of whether it is under Rule 37 or its inherent authority, a federal court applies federal law when addressing issues of spoliation of evidence. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993) (applying federal law when addressing spoliation in diversity litigation)); *see also e.g.*, *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir.2009); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir.2001); *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir.1999); *King v. Ill. Cent. R. R.*, 337 F.3d 550, 556 (5th Cir.2003). "A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover*, 6 F.3d at 1329. District courts may impose sanctions for spoliation of evidence as part of their inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Napster*, 462 F.Supp.2d at 1066 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

This Court may sanction Defendants for destroying or losing the photographs and videotapes in one of many ways. First, the Court can instruct the jury that it may draw an adverse inference against the party or witness responsible for destroying the evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993). Second, the Court can exclude witness testimony based upon the destroyed evidence and proffered by the party responsible for destroying the evidence. *Id.* at 1329. Third, the Court can dismiss the claim of the party

responsible for destroying the evidence. Dismissal, however, is only appropriate where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir, 2006) (citing *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir.1995). Finally, the Court may issue civil contempt sanctions to compensate the opposing party for the violation, including assessing attorney's fees.

      a.     <u>Adverse Inference</u>

In this case, Plaintiff explains that he is not seeking the remedy of dismissal or any other remedy. Rather, Plaintiff merely seeks an adverse inference.

In regards to the videotape, the Plaintiff requests the following jury instruction:
> In this case, you have heard evidence that Rodney Cox and Ron Welsh were engaged in a physical altercation in the Charlie 2 dorm at the North Las Vegas Detention Center. There was a video camera in that location and there was video footage of the incidents in question. There is a dispute as to whether or not Daniel LaJocies was involved in that physical altercation and whether his eye injury was sustained at the hands of Ron Welsh or at the hands of the Defendants and officers of the North Las Vegas Police Department. The video of the incidents in question was initially preserved by Lieutenant Primm of the North Las Vegas Detention Center, and was in the exclusive possession, control and custody of the North Las Vegas Detention Center. The Defendants have since then destroyed or lost the evidence.
>
> The Jury and the Plaintiff were entitled to have that videotape evidence.
> Under the law, where a Plaintiff is unable to have evidence that was in the exclusive possession of the Defendants and it was destroyed or lost, such as the video tape evidence in this case, a presumption arises that had the video been provided to the Plaintiff it would have been favorable to the Plaintiff and unfavorable to the Defendants. Such a presumption exists in this case.
>
> Therefore, the Court directs you to find as a matter of fact the following:

/ / /

1. If the video had been produced it would have shown that Daniel LaJocies was not involved in the physical altercation with Rodney Cox and Ron Welsh;

2. The first physical contact made with Daniel LaJocies was when he was tased by Defendant Brigida;

3. Daniel LaJocies was tased three times by Officer Brigida, once in the back of the head, once in the chest, and once in the groin.

In regards to the lost photographs, the Plaintiff requests the following jury instruction:

In this case, you have heard evidence that Plaintiff LaJocies was tased by Officer Brigida. There were pictures taken of Daniel LaJocies injuries as a result of being tased. The pictures of the taser injuries were initially preserved by officers of the North Las Vegas Detention Center, and while in the exclusive possession, control and custody of the North Las Vegas Detention Center, the Defendants have destroyed or lost the evidence.

The Jury and the Plaintiff were entitled to have that photographic evidence.

Under the law, where a Plaintiff is unable to have evidence that was in the exclusive possession of the Defendant and it was destroyed or lost, such as the photographic evidence in this case, a presumption arises that had the photographs been provided to the Plaintiff it would have been favorable to the Plaintiff and unfavorable to the Defendants. Such a presumption exists in this case.

Therefore, the Court directs you to find as a matter of fact the following:

1. If the photographs had been produced they would have shown that Daniel LaJocies had Taser injuries/marks on the back of his neck, on his chest, and on his groin.

The Court's broad authority includes the power to permit an adverse inference from the spoliation of relevant evidence against the spoliating party. *See Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.1991). "An adverse inference is an instruction to the trier of fact that 'evidence made unavailable by a party was unfavorable to that party.'" *Lewis v. Ryan,*

261 F.R.D. 513, 521 (S.D.Cal.2009).  The Ninth Circuit has explained:

> [t]he adverse inference sanction is based on two rationales, one evidentiary and one not. The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document.... The other rationale for the inference has to do with its prophylactic and punitive effects. Allowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial.

*Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.1991).

It is important to note that a finding of bad faith is not a prerequisite for an adverse inference. *Glover*, 6 F.3d at 1329.  However, although a party's destruction of evidence need not be in bad faith in order for the court to impose sanctions, the party's motive or degree of willfulness or fault is relevant to the severity of the sanction to be imposed. *Advantacare Health Partners, supra, citing Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.1991), *cert. denied* 503 U.S. 962, 112 S.Ct. 1567, 118 L.Ed.2d 212 (1992); *Baliotis v. McNeil*, 870 F.Supp. 1285, 1291 (M.D.Pa.1994).  Generally, the court should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim. *Id.*  A district court's adverse inference sanction should be carefully fashioned to deny the wrongdoer the fruits of its misconduct yet not interfere with that party's right to produce other relevant evidence. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 386–87 (9th Cir. 2010).

The Court agrees that an adverse instruction is the proper sanction in this case but that at best, only gross negligence or willfulness has been established, not bad faith.  Although the adverse inference instruction might make the defense of the case more difficult, the

sanction in this case should not be insurmountable. Accordingly, the specific instructions proposed by Plaintiff will not be given. More specifically, the following language will not be included in the instruction:

1. If the video had been produced it would have shown that Daniel LaJocies was not involved in the physical altercation with Rodney Cox and Ron Welsh;

2. The first physical contact made with Daniel LaJocies was when he was tased by Defendant Brigida;

The limited viewing angle of the missing videotape could never have irrefutably established these facts had the missing tape been preserved. Rather, at best the videotape would have failed to show Plaintiff being struck by an inmate or otherwise involved in a physical altercation with Cox and Welsh. A more accurate instruction is appropriate.

Therefore, the following adverse instruction will be given to the jury:

> Under the law, where a Plaintiff is unable to provide the jury with evidence that was in the exclusive possession of the Defendants but was destroyed or lost, such as the photographs and video tape evidence in this case, a presumption arises that had the photographs and video tape been preserved, they would have been favorable to the Plaintiff and unfavorable to the Defendants. Such a presumption exists in this case.
>
> The missing video tape was initially preserved by Lieutenant Primm of the North Las Vegas Detention Center, and was in the exclusive possession, control and custody of the North Las Vegas Detention Center. The Defendants have since then destroyed or lost the videotapes.

Therefore, the Court directs you to find as a matter of fact the following:

1. If the video had been produced it would not have captured footage of Daniel LaJocies involved in a physical altercation with Rodney Cox and Ron Welsh;

///

2. If the video had been produced it would not have captured footage of any prior physical contact made with Daniel LaJocies before he was tased by Defendant Brigida;

3. If the video had been produced it would have captured footage of Daniel LaJocies being tased three times by Officer Brigida, once in the back of the head, once in the chest, and once in the groin.

The missing photographs taken of Daniel LaJocies' injuries were initially preserved by officers of the North Las Vegas Detention Center, and were in the exclusive possession, control and custody of the North Las Vegas Detention Center. The Defendants have since then destroyed or lost the photographs.

1. If the photographs had been produced they would have shown that Daniel LaJocies suffered Taser injuries/marks on the back of his neck, on his chest, and on his groin.

## **CONCLUSION**

Defendants willfully failed to preserve the photographs and video tape. This was evidence they knew or had reason to know was evidence 'potentially relevant' to Plaintiff's litigation. Therefore, an adverse inference jury instruction will be provided that directs the jury to find that the items contained only information most favorable to Plaintiff. However, the instruction will be limited to accurately refer only to the information the missing items could have actually provided.

DATED this 28th day of April, 2011.

_____
Gloria M. Navarro
United States District Judge