UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| DANIEL RAY LAJOCIES, | ) | Case No.: 2:08-cv-00606-GMN-GWF |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| CITY OF NORTH LAS VEGAS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment (ECF No. 110). Plaintiff filed a Response on June 24, 2010 (ECF No. 127) and Defendants filed a Reply on July 12, 2010 (ECF No. 130).

## BACKGROUND

In May 2005, Plaintiff Daniel LaJocies ("Plaintiff") was a recipient of a corneal transplant. (MSJ 4:2-4, ECF No. 110). One year later, on or about July 29, 2006, Plaintiff was a prisoner housed at the North Las Vegas Detention Facility in the custody of the North Las Vegas Police Department. (Response 4:9-10, ECF No. 127). On that day, Plaintiff was involved in a physical confrontation with other cell mates, though the extent of his involvement is disputed. In dealing with this altercation, Plaintiff alleges that the police officers used a taser on the back of his head. (MSJ 7:3-6, ECF No. 110). Following the incident, Plaintiff was found to have an injury to the corneal transplant in his right eye, causing the transplant to fail.

The incident that gave rise to Plaintiff's injury is recounted by three witnesses. Plaintiff testified that the following is an accurate picture of the events of that day. Plaintiff was

1  watching TV in the common room and decided to get up to have some coffee. (LaJocies
2  Depo., Defendants' Ex. A 48:1–51:11, ECF No. 111).  As he was getting his coffee he noticed
3  a scuffle going on in a cell. (*Id.*).  He went over to the cell and closed the door so other inmates
4  would not come in. (*Id.*).  Soon after he closed the door, the door opened and he was tasered in
5  the back of the head. (*Id.*).  Plaintiff fell to the ground and then was tasered in the chest and
6  told to get on his stomach. (*Id.*).  After being tasered in the head he recounted that it was blurry
7  in both eyes. (*Id.*).  A nurse came to check on his eye and she treated him before he was
8  transported to a hospital. (*Id.*).  Plaintiff further testified that he was not involved in the fight at
9  all and sustained no blows to his head or face as a result of the altercation before being tasered.
10  (*Id.* at 63:1-10).

11       Officer Michael Brigida, the officer alleged to have tasered Plaintiff in the back of the
12  head gave the following testimony regarding the incident.  Brigida noticed two inmates in Cell
13  15 and thought they were horse playing. (Brigida Depo., Defendants' Ex. C 10:22–12:14, ECF
14  No. 113).  He then witnessed Plaintiff enter the cell and close the door. (*Id.*).  At this time,
15  Brigida first noticed what appeared to be blood on one of the inmates, Cox's face. (*Id.*).
16  Brigida radioed for help and proceeded to the cell to stop the fight. (*Id.*).  He gave verbal
17  commands to stop but all commands were ignored. (*Id.*).  All three inmates were involved in
18  the fighting at this point. (*Id.*).  Sergeant Rogers arrived at the scene and gave Brigida orders to
19  taser inmate Cox. (*Id.*).  Brigida fired his taser but is not sure if he hit Cox or not. (*Id.*).  As
20  Plaintiff and the other inmate, Welsh, continued to fight, Brigida then fired his taser at
21  Plaintiff, hitting him in the chest and then fired again, hitting Plaintiff in the inner groin of his
22  thigh. (*Id.*).  Plaintiff turned over onto his stomach and was handcuffed. (*Id.*).

23       The final version of the events was testified to by inmate Welsh.[1]  Mr. Welsh testified

---

[1] Mr. Welsh also apparently testified at his deposition that he had unsuccessfully tried to dupe Plaintiff into paying him for favorable testimony but that he had always planned to testify against Plaintiff even after receipt of payment to make sure Plaintiff "doesn't get a dime because he doesn't deserve it."

1  that he was already in the middle of a fight with inmate Cox, when Plaintiff entered the cell.
2  (Welsh Depo., Defendants' Ex. D 12:8–15:3, ECF No. 114).  Mr. Welsh told Plaintiff that it
3  did not concern him and for Plaintiff to leave, but Plaintiff stayed and closed the door. (*Id.*).
4  Plaintiff then proceeded to hit Mr. Welsh. (*Id.*).  Mr. Welsh ended up on the floor with Plaintiff
5  kicking him. (*Id.*).  Brigida then entered the cell to break up the fight and tasered Plaintiff.
6  (*Id.*).  Mr. Welsh was severely injured as a result of this altercation, breaking his hip. (*Id.*)  Mr.
7  Welsh further testified that Plaintiff was tasered by Brigida but that he was the one responsible
8  for Plaintiff's eye injury before that happened. (*Id.* at 16:7–17:7).

9  Plaintiff filed this lawsuit on May 12, 2008.  Plaintiff's Second Amended Complaint
10  alleges five causes of action: (1) Excessive Force (pursuant to 42 U.S.C. § 1983); (2) Failure to
11  Train (pursuant to 42 U.S.C. § 1983); (3) Unconstitutional Policy (pursuant to 42 U.S.C. §
12  1983); (4) Battery (pursuant N.R.S. 200.481); (5) Mayhem (pursuant to N.R.S. 200.280). (ECF
13  No. 94).  In addition to compensatory damages Plaintiff also asks for injunctive relief and
14  punitive damages. (*Id.*).

## **DISCUSSION**

### A.   **Legal Standard for Summary Judgment**

17  The purpose of summary judgment is to avoid unnecessary trials when there is no
18  dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of*
19  *Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is proper if the evidence
20  shows that there is no genuine issue as to any material fact and the moving party is entitled to
21  judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
22  (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment
23  is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  As summary
24  judgment allows a court to dispose of factually unsupported claims, the court construes the
25  evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194,

1197 (9th Cir. 1996).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Id.* As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id*.

**B.     42 U.S.C. § 1983**

Plaintiff sues Defendants for various civil rights violations under 42 U.S.C. § 1983. A plaintiff may bring suit under § 1983 to redress violations of "rights, privileges, or immunities secured by the [United States] Constitution and [federal] laws" that occur under the color of state law. 42 U.S.C. § 1983.

**1.     Excessive Force (First Cause of Action)**

In order to prevail on a section 1983 claim the plaintiff must demonstrate that: (1) the action occurred "under color of state law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908 (1981) *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986). Plaintiff alleges that Defendants used excessive force in violation of the Eighth and Fourteenth Amendments. Defendants argue that Officer Brigida and the other defendants are entitled to qualified immunity on this claim.

"The doctrine of qualified immunity protects government officials 'from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity is "immunity from suit rather than a mere defense to liability . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985). In order to establish qualified immunity, the court must decide "whether the facts that a plaintiff has alleged make out a violation of a constitutional right . . . [and] whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson*, 129 S. Ct. at 815, 818. If either of these is absent from the claim, than qualified immunity is appropriate. Further, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987).

The Constitutional right at issue here is the right to be free from excessive force under the Eight Amendment for the reasons explained *infra.* The court examines the status of Plaintiff's detention during the time of the altercation to determine if the Fourth, Eighth or Fourteenth Amendment applies to his excessive force claims. The "Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." *Pierce v. Multnomah County, Or.*, 76 F.3d 1032, 1043 (9th Cir. 1996). The Due Process clause of the Fourteenth Amendment protects pretrial detainees from the use of excessive force that amounts to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535–539, 99 S.Ct. 1861 (1979); *Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865 (1989). Examining *Pierce, Bell* and *Graham* it appears that the Fourteenth Amendment standard applies to a pretrial detainee that is being properly held under probable cause but before a conviction. After conviction, the Eighth Amendment "serves as the primary source of

substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1978 (1986).

Plaintiff was being held as a pre-trial detainee at the North Las Vegas Detention Center at the time of the incident. However he was also serving time as a convicted prisoner on a federal weapons charge. (*See* LaJocies Depo., Plaintiff's Ex. A, 5:8-24, ECF No. 111). The Fourth Amendment's protection of unreasonable searches and seizures applies to situations where excessive force used during the arrest of a person and when an arrestee is kept at a facility for booking procedures without a probable cause of arraignment hearing. *See Pierce*, 76 F.3d at 1042–43. This protection is not implicated in this case, because Plaintiff was already serving time as a convicted prisoner. Likewise, the Fourteenth Amendment's due process protection that a person suspected of a crime should not be subject to punishment does not apply.

Plaintiff may be correct in arguing that while he was under a sentence of imprisonment for his federal conviction, he was likely only being held in the jail and not a federal prison due to his pretrial detainee status. However, regardless of why he was located at the North Las Vegas Detention Center, it is uncontested that Plaintiff was also already serving time for the federal weapons charge and was thus subject to the Federal Government's power of punishment. "Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be "cruel and unusual" under the Eighth Amendment." *Bell*, 441 U.S. at 537. Thus the Court finds that the Eighth Amendment's prohibition against cruel and unusual punishment sets the applicable constitutional limitations to be applied to Plaintiff in this case. Therefore, in order for Officer Brigida to not have qualified immunity it must be clear to a reasonable officer that his conduct amounted to excessive force in violation of the Eighth Amendment. *See Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151.

To prove use of excessive force in violation of the Eighth Amendment, an inmate must show the official applied force "maliciously and sadistically" for the purpose of inflicting pain, rather than in a "good faith effort to maintain or restore discipline." *Whitley*, at 320–21. The court should look to several factors to determine whether the force used was malicious or sadistic including: the injury sustained by the inmate, the need for the application of force, the relationship between the need for force and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995 (1992). After looking at these factors the court should draw inferences to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm that is tantamount to a knowing willingness that it occur." *Whitley*, 475 at 321.

However, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 at 547. "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." *Whitley*, 475 U.S. at 322.

Viewing the evidence in the light most favorable to the Plaintiff, this Court does find that a reasonable jury could conclude that Officer Brigida's actions were "malicious or sadistic." The injury suffered by Plaintiff, the loss of sight, is undoubtedly severe. Accepting Plaintiff's testimony that he was not participating in the altercation, there is no dispute that a fight was going on in the cell when Officer Brigida entered. However, there is a question about whether or not the use of the taser was necessary and excessive. Plaintiff's version of the fight was that it was nothing more than a scuffle, while Officer Brigida testified that it was

more violent and that he saw blood. Based on Plaintiff's version of the facts, Officer Brigida could have waited for back-up before entering the cell and then use of a taser may have been unnecessary. However, Officer Brigida testified his verbal commands to stop fighting were ignored. According to the Plaintiff, he didn't even hear Officer Brigida enter the cell, but only remembers being tasered. Plaintiff testified that he fell to the floor after being tasered in the head and then was again tasered when he was on the ground.

Furthermore, while the exact sequence of events is subject to dispute, the jury will receive the adverse inference instruction as follows:

> Under the law, where a Plaintiff is unable to provide the jury with evidence that was in the exclusive possession of the Defendants but was destroyed or lost, such as the photographs and videotape evidence in this case, a presumption arises that had the photographs and videotape been preserved, they would have been favorable to the Plaintiff and unfavorable to the Defendants. Such a presumption exists in this case.
>
> The missing video tape was initially preserved by Lieutenant Primm of the North Las Vegas Detention Center, and was in the exclusive possession, control and custody of the North Las Vegas Detention Center. The Defendants have since then destroyed or lost the videotapes.
>
> Therefore, the Court directs you to find as a matter of fact the following:
>
> 1. If the video had been produced it would not have captured footage of Daniel LaJocies involved in a physical altercation with Rodney Cox and Ron Welsh;
>
> 2. If the video had been produced it would not have captured footage of any prior physical contact made with Daniel LaJocies before he was tasered by Defendant Brigida;
>
> 3. If the video had been produced it would have captured footage of Daniel LaJocies being tasered three times by Officer Brigida, once in the back of the head, once in the chest, and once in the groin.

> The missing photographs taken of Daniel LaJocies' injuries were initially preserved by officers of the North Las Vegas Detention Center, and were in the exclusive possession, control and custody of the North Las Vegas Detention Center. The Defendants have since then destroyed or lost the photographs.
>
> 1. If the photographs had been produced they would have shown that Daniel LaJocies suffered Taser injuries/marks on the back of his neck, on his chest, and on his groin.

Finally, Plaintiff's expert determined that if Plaintiff's eye had indeed been injured prior to his being tasered by Officer Brigida, the pain would have been immediate and paralyzing such that he could not have still been fighting when he was tasered as the officer claims. Two officers testified in their deposition that their reports were altered and a third official testified he could not confirm the authenticity of his signature.

Under this scenario, a reasonable jury could infer that Officer Brigida entered the cell to break up the fight but acted wantonly for the purpose of inflicting pain or punishment on the inmates. Because there are material issues of fact regarding the severity of the altercation and Plaintiff's participation in the fight and whether or not it was necessary to taser Plaintiff multiple times, the Court finds that the question of excessive force is best left for the jury to decide. Accordingly, Officer Brigida is not entitled to qualified immunity where it could be clear to a reasonable person that his conduct amounted to excessive force under the Eighth Amendment. Therefore, Defendants' Motion for Summary Judgment as to the First Cause of Action (excessive force) is DENIED.

### 2. Inadequate Training & Unconstitutional Policy

In order to state an official capacity claim, a plaintiff must allege there is "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or for a "governmental 'custom' even though such a custom has not received formal approval through the body's official decision [-] making channels." *Monell v. Dept. of Soc.*

*Serv. of City of N.Y.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018 (1978). Municipal officers may be sued in their official capacities, but the plaintiff must prove that any constitutional violations occurred as a result of an official policy or custom, *Monell*, 436 U.S. at 690, or through a failure to train municipal employees adequately, *City of Canton v. Harris*, 489 U.S. 378, 388–91, 109 S.Ct. 1197 (1989). In order to withstand summary judgment in a 42 U.S.C. § 1983 claim against a municipal entity, a plaintiff must offer enough evidence to create a genuine issue of material fact as to both the existence of a constitutional violation and municipal responsibility for that violation. *See Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018, (1978).

### a. Inadequate Training (Second Cause of Action)

Another way plaintiff may demonstrate municipal liability for a constitutional violation is by showing that the violation occurred as a result of inadequate training on the part of the municipality. *Herrera v. Las Vegas Metropolitan Police Dept.*, 298 F. Supp.2d 1043, 1052 (D.Nev. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, (1989)). "In order to establish a claim under § 1983 due to inadequate training, the [plaintiff] must provide evidence from which a reasonable jury could find that there was an inadequate training program, and that the [defendant] was deliberately indifferent to whether its officers received adequate training." *Herrera*, 298 F. Supp.2d at 1052. There must be actual causation between the inadequate training and the deprivation of the plaintiff's rights. *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir.1989).

Plaintiff does not allege any facts regarding the training that Officer Brigida received for the use of the taser gun. There is no evidence in the record provided that states what kind of training Officer Brigida received or even evidence of lack thereof. Instead, Plaintiff makes an assumption that Officer Brigida's training was inadequate based on expert reports of the incident. The expert report itself does not review the qualifications of the training programs that the officers completed. The report only makes a blanket statement that Officer Brigida

was inadequately trained to use the taser but does not give any reasons to justify this opinion. Thus, Plaintiff offers no evidence from which a reasonable jury could find that there was an inadequate training program or that the City of North Las Vegas, Mark Paresi and Joseph Forti were deliberately indifferent to whether their officers received adequate training.

Accordingly the Court finds that City of North Las Vegas, Mark Paresi and Joseph Forti cannot be liable for inadequate training under § 1983 and Defendants' Motion for Summary Judgment regarding the second cause of action is GRANTED.

### b. Unconstitutional Policy or Custom (Third Cause of Action)

A plaintiff may establish municipal liability by demonstrating that (1) conduct pursuant to an official policy inflicted the injury; (2) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (3) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (4) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002).

Plaintiff argues that the City of North Las Vegas, Mark Paresi, and Joseph Forti ratified Officer Brigida's behavior. Plaintiff presents evidence of not just one, but multiple forged reports relating to the incident based on the testimony of Officers. (*See* Dillard Depo., Plaintiff's Ex. D, p. 28, ECF No. 127-4). This Court has already found that there was spoliation of evidence regarding the missing videotapes and missing photographs. (Order, ECF No. 141). Plaintiff argues that based on all of this information the supervisors including, Mark Paresi and Joseph Forti should have conducted some sort of investigation. Based on this lack of concern regarding the apparent mishandling of this incident a reasonable person could confer that the City of North Las Vegas, Mark Paresi, and Joseph Forti ratified Officer

Brigida's behavior, as well as the actions of other officers involved in the incident.

The Court agrees.  While a single failure to discipline an officer is insufficient to establish ratification, this is clearly not a case where there was only a failure to discipline.  *See Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003).  There is also substantial evidence of a cover-up of the incident demonstrating that the Defendants may have ratified a subordinate's action.  As Plaintiff has raised many material issues of fact regarding the issue of ratification, this is best left for the jury to decide.  *See Christie v. Iopa*, 176 F.3d 1231 at 1238–39.  Therefore, Defendants' Motion for Summary Judgment regarding the third cause of action (unconstitutional policy) is DENIED.

**C.  State Law Claims (Fourth and Fifth Causes of Action)**

Plaintiff's fourth and fifth causes of actions are state law claims for Battery and Mayhem.  Battery is defined as the unlawful touching of another without justification or excuse. *See* N.R.S. § 200.400.  Mayhem consists of unlawfully depriving a human being of a member of his or her body, or disfiguring or rendering it useless. *See* N.R.S. § 200.280.  Defendants argue that they are entitled to discretionary immunity under Nevada law.

1)  Discretionary Immunity

In Nevada, certain government actors have discretionary immunity. N.R.S. § 41.032.  This statute immediately follows the statute in the NRS that waives the state's sovereign immunity and retains the state's Eleventh Amendment protection. *See* N.R.S. § 41.031.  The discretionary immunity statute refers to actions brought "against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions." N.R.S. § 41.032.  On its face, this statute does not immunize municipal governments or their employees, such as Defendants in this case, because in light of modern case law, municipalities are considered independent corporations or "persons" with their own identities, not mere political subdivisions of the state, at least in the eyes of Congress. *See Monell v. Dep't of Social Servs.*

*of City of New York*, 436 U.S. 658, 690 (1978).  The Nevada Supreme Court, however, has implicitly assumed, without directly addressing the question, that municipalities are political subdivisions of the state for the purposes of the discretionary immunity statute. *See, e.g.*, *Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354–55 (Nev. 1987).  This construction is consistent with *Monell*, because the Nevada discretionary immunity statute only protects state and municipal agencies against Plaintiff's state causes of action.

The question remains whether there is discretionary immunity as a matter of law in this case.  The statute immunizes municipal agencies and their employees against actions:

> [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

N.R.S. § 41.032(2).  In interpreting this statute, the Nevada Supreme Court has explicitly adopted the two-part test for discretionary immunity under the Federal Tort Claims Act, under which there is discretionary immunity when: (1) the allegedly negligent acts involve elements of judgment or choice; (2) and the judgment or choice made involves social, economic, or political policy considerations. *Martinez v. Maruszczak*, 168 P.3d 720, 722 (Nev. 2007) (citing *Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991)).  It is important to note that the court does not consider whether the official abused his or her discretion, *see* § 41.032(2), but only whether the acts concerned a matter in which the official had discretion.  In other words, the immunity is not infinitely broad, but once it is determined that the acts involved judgment or choice on social, economic, or political policy considerations, the immunity applies even to abuses of discretion.

Plaintiff's expert determined that the conduct in question violated the written policy of the City of North Las Vegas.  This would certainly negate the use of discretionary judgment or

choice. Furthermore, Plaintiff argues that discretionary immunity does not apply to Defendant's because their acts were executed with bad faith. See *Falline v. GNLV.*, 823 P.2d 888, 892 n.3 (Nev. 1991).

The *Falline* Court held that "bad faith" encompasses acts that are completely outside the authority of an official: "Bad faith . . . involves an implemented attitude that completely transcends the circumference of authority granted the individual or entity. In other words, an abuse of discretion occurs within the circumference of authority, and an act or omission of bad faith occurs outside the circumference of authority." *Id.* at 892 n.3.

There does exist here an issue of bad faith surrounding both Officer Brigida's actions as well as those of the agency. Plaintiff adamantly denies any participation in the altercation. There is also a possibility that the fight was not as violent as Defendants contend and Officer Brigida's decision to enter the cell without back-up and to use the taser on Plaintiff not just once, but multiple times could have been an act of bad faith. It is proper to allow the jury to decide the disputed issues of fact. The failure of the agency to conduct a follow-up investigation, the spoliation of evidence and the alteration of multiple reports could also reasonably permit a jury to find bad faith. It is proper to allow the jury to decide the disputed issues of fact.

Therefore, the bad faith exception does apply. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's Battery and Mayhem claims are DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 110) is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment based on Plaintiff's Second Cause of Action under 42 U.S.C. § 1983 due to inadequate training is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Plaintiff's First, Third, Fourth and Fifth Causes of Action is **DENIED**.

DATED this 24th day of May, 2010.

_____
Gloria M. Navarro
United States District Judge